UTESS v. ERIE R. CO.

(Supreme Court, Special Term, Monroe County. June 20, 1910.)

1. NEW TRIAL (§ 150*)—MOTION—AFFIDAVIT—SUFFICIENCY.

Affidavit on motion for new trial for newly discovered evidence after verdict for plaintiff in an action against a railroad company for injuries by being struck by a piece of coal falling from the tender of a passing engine *held* not sufficiently convincing that plaintiff was struck by part of the engine to warrant a new trial.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 150.*]

Action by Max Utess against the Erie Railroad Company. Heard on defendant's motion for new trial on the ground of newly discovered evidence. Motion denied.

See, also, 123 N. Y. Supp.1146.

Adelbert Moot, for the motion.
Philetus Chamberlain, opposed.

BENTON, J. The application is made upon the newly discovered evidence of Ira S. Myers and William J. Dingman tending to show that the plaintiff was hit by the engine, rather than by coal falling from the tender, as claimed by him. The affidavit of Myers is unimportant. He does not know what hit plaintiff, and did not know he had been struck until some 10 or 15 minutes after the occurrence. Dingman, however, is more explicit, yet he nowhere says that he saw the engine hit plaintiff. His affidavit is argumentative rather than di-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rect. He gives reasons which to him seem convincing that he must have seen it, although he does not in fact say that he did see it. He does say: "The engine struck him. He was struck by the front part of the engine." Not content to leave it there, he says:

"It appeared to me that the east end of the bumper beam struck this man. I saw him pitch forward and to the left of the track. The front part of the engine then came between me and this man and obstructed my view. I was near the front of the engine on the right side of the track, and Utess had just crossed in front of me to the river side of the track. I am positive that the engine struck him as I was in the neighborhood of 20 feet from him, and I could plainly see him pitch forward. He could not have been struck by a lump of coal from the tender, for the tender was the length of the engine from him when he was struck."

This sounds to me like the qualified statement of a man who is more ready to give reasons than state facts. Dingman was very much excited, as he says, and hastened to the roundhouse to notify Mr. Moore of the accident, but, not being familiar with the surroundings, went in the wrong direction, and apparently after some time did see Mr. Moore. The affidavit is suspiciously silent as to what he told Mr. Moore, and Mr. Moore's affidavit is not used, and no statement is made by him as to whether or not he received any information from Dingman.

Moore was, and is yet, foreman at the roundhouse of defendant. Plaintiff says he has talked with Moore a number of times since the accident, and he did not at any time mention Dingman's name. It is difficult to understand why a thorough investigation by claim agents did not disclose Moore's information which he received from Dingman. If Moore did not receive such information, Dingman is impeached. If he did, he of all men should explain why it was not imparted to the claim agents who apparently, to his knowledge, were seeking information and the names of all witnesses obtainable. Of all persons connected with this case plaintiff and the engineer were in position best to see and know what actually occurred, and it was the business of each to look and know—one was giving and the other receiving signals. The signalman was on the engineer's side of the train, and the engineer testifies, as he passed plaintiff, plaintiff was about five feet from the track. The forward part of the engine could not have struck Utess and the engineer been ignorant of it, nor would such an event fade easily from the memory of the engineer in charge of the engine at the time it occurred.

To the question, "Did your engine hit him that morning?" the engineer replied, "No, sir; not that I know of. Q. When you went by him you say he stood about five feet from you? A. He stood right beside the target. Q. You did not see Utess get struck at all? A. No, sir."

Plaintiff claims he was struck by coal which fell from the tender, and which was behind the position of the engineer, who was in the cab, looking forward. The engineer's testimony is consistent with that of plaintiff. The engineer was not called as a witness upon the trial. His testimony for use upon this motion was taken before a referee. The apparent truthfulness and candor of the plaintiff in giving

his testimony was remarked upon by defendant's counsel, and was noted by the court.

Harry T. Callister was a witness upon the trial, and makes an affidavit upon this motion. He says:

"I saw the train pass Utess, saw the engine pass him, and Utess was then standing east from the east rail of the track. The engine did not strike Utess at all, because I was looking at him as the engine passed him, and he did not make any effort whatever to pass to the west side of the track as the engine passed him, and, as the train passed, I saw him lying on the east side of the track."

The case has been twice tried, appealed once to the Appellate Division, commented upon extensively by the public press, and generally discussed by the employés of defendant. The application is very late in the case. It is for the public interest as well as for the interest of litigants that determination be made as speedily as consistent with justice. The affidavit is not to me convincing. It is not direct. I believe he is one of those witnesses who testifies, "I must have seen it, because," etc., rather than one of those who testifies "I did see it," etc. Coupled with the other circumstances which lessen the weight very materially of the credibility of the proposed testimony, I am of the opinion that the motion should be denied.

It is denied, with $10 costs and the disbursements of the motion.